UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TIBOR FARKAS,

               Plaintiff,

        -against-

Police Officer DANAMARI ALESSIO, in
her individual capacity, Police Officers "JOHN
and JANE DOE 1-10" in their individual
capacities, and the CITY OF NEW
YORK, New York,

               Defendants.

-------------------------------------------------------x

FILED
U.S. DISTRICT COURT

2014 DEC 19   PM 3: 03

S.D. OF N.Y.W.P.

**COMPLAINT**

**Jury Trial Demanded**

14 CV 10021

JUDGE SEIBEL

Plaintiff, TIBOR FARKAS, through his attorneys, The Bellantoni Law Firm, PLLC,

for his complaint states as follows:

## NATURE OF THE ACTION

1.     This is an action for, *inter alia,* injunctive relief, compensatory and punitive

damages, proximately resulting from defendants' violation of Plaintiff's rights pursuant to the

Americans With Disabilities Act ("ADA"), 42 U.S.C. §12111, *et seq.* and the First and Fourth

Amendments to the United States Constitution, 42 U.S.C. §1983 and the Rehabilitation Act of

1973, 29 U.S.C. §794.

## JURISDICTION

2.     The Court's jurisdiction over plaintiff's federal claims is invoked pursuant to 28

U.S.C. §1331, 28 U.S.C. §1343. A charge was duly filed with the Equal Employment Opportunity

Commission ("EEOC") on or about July 28, 2014. A Right to Sue letter was subsequently issued

by the EEOC.

## THE PARTIES

3. Plaintiff, TIBOR FARKAS (hereinafter "Plaintiff") is a domiciliary of Yonkers, New York and a resident of the Northern Counties.

4. Plaintiff is a disabled individual within the meaning of the Americans with Disabilities Act, to wit, permanently and completely hearing impaired.

5. Defendant Police Officer DANAMARI ALESSIO ("Alessio") was, at all times relevant herein, a police officer employed by the City of New York Police Department. Alessio is sued herein in her individual capacity.

6. Defendants Police Officers "JOHN AND JANE DOE 1-10" ("Doe Defendants") were, at all times relevant herein, police officers employed by the City of New York Police Department. The Doe Defendants are sued herein in their individual capacities.

7. Defendant CITY OF NEW YORK, New York (the "City") is a municipal corporation duly organized pursuant to the laws of the State of New York.

8. The City is a covered entity within the meaning of the Americans with Disabilities Act.

9. The City is the recipient of federal funding under the terms of the the Rehabilitation Act.

## THE MATERIAL FACTS

10. On February 2, 2014, Plaintiff engaged the services of a taxi cab in the vicinity of 42nd Street, New York, New York.

2

11.     The cab displayed symbols indicating that it accepted credit cards as fare payment.

12.     There was no signage inside or outside of the cab indicating that payment must be in cash.

13.     There was no signage inside or outside of the cab indicating that credit cards would not or could not be accepted as fare payment.

14.     When Plaintiff's cab arrived at his destination, Plaintiff attempted to pay the fare of $44 by swiping his credit card into the cab's scanner.

15.     The taxi driver indicated to Plaintiff that he would not accept the credit card payment.

16.     The taxi driver indicated to Plaintiff that he must pay for the fare in cash.

17.     Plaintiff had no cash on his person and indicated for the driver take him to an ATM machine so that he could pay for the fare.

18.     When they arrived at the ATM machine, Plaintiff attempted to contact his wife to obtain the PIN number.

19.     The taxi driver contacted the police and Plaintiff waited for the police to arrive.

20.     Defendants Alessio and the Doe Defendants arrived at the location and approached Plaintiff and the taxi driver.

21.     Defendants attempted to speak with Plaintiff, and he indicated to them that he was deaf.

22.     Defendants spoke with the taxi driver and each other in Plaintiff's presence but he had no means of knowing what was being communicated.

23.     Plaintiff indicated to Defendants that he swiped his credit card to pay for the fare but the Taxi driver would only accept cash.

3

24.     Plaintiff indicated to Defendants that he wanted to obtain money from the ATM but could not recall the PIN number.

25.     Plaintiff indicated to Defendants that he wanted to contact his wife to obtain the PIN number for the ATM machine and requested their assistance.

26.     Defendants refused to assist Plaintiff in contacting his wife so that he could obtain money to pay the fare.

27.     Defendants failed to provide Plaintiff with any means of effectively communicating with them.

28.     Defendants grabbed Plaintiff by the throat and placed him under arrest for a misdemeanor offense without probable cause.

29.     Defendants could have issued a criminal summons to Plaintiff and were not required to place Plaintiff under arrest.

30.     Defendants arrested Plaintiff because they were frustrated and annoyed with Plaintiff's inability to communicate with them with spoken words.

31.     Defendants handcuffed Plaintiff's hands behind his back.

32.     It is the policy and procedure of the New York City Police Department to handcuff arrestees behind their back irrespective of any disability.

33.     Defendants refused to reasonably accommodate Plaintiff by handcuffing him in the front.

34.     Handcuffing Plaintiff in the front would have allowed him freedom of speech, as he uses his hands to communicate with sign language.

35.     By handcuffing Plaintiff behind his back, Defendants effectively gagged Plaintiff and restrained his speech, as he could no longer use his hands to communicate with sign language.

36.     Handcuffing Plaintiff in the front would not have caused any undue burden or safety concern for Defendants.

37.     Plaintiff was placed into a police vehicle and transported to jail.

38.     Plaintiff, who had never been arrested before in his life, was shaking and terrified and confused as to what was happening.

39.     At the police precinct, Plaintiff indicated his request for a sign language interpreter, but no interpreter was provided.

40.     Plaintiff was placed into a holding cell where Defendants continued to restrain his speech by maintaining his handcuffs behind his back.

41.     Defendants refused to allow Plaintiff access to paper and a writing instrument in order to effectively communicate.

42.     Defendants attempted to ask Plaintiff what occurred in connection with the taxi cab ride but did not provide Plaintiff with a sign language interpreter or paper with which to communicate or any other accommodation for his disability in order to communicate.

43.     During their contact with Plaintiff, Defendants failed at all times to ensure any effective means of communication occurred between themselves and Plaintiff.

44.     Defendants failed to provide Plaintiff any accommodations to assist him with communicating, despite his requests.

45.     Defendants intentionally discriminated against Plaintiff because of his disability in connection with his arrest.

46.     Defendants intentionally discriminated against Plaintiff because of his disability in connection with his detention.

47.     None of the accommodations sought by Plaintiff would have resulted in a fundamental alteration of necessary procedures or an undue financial or administrative burden on the Defendants.

48.     Plaintiff was caused to expend money to retain an attorney to represent him in the criminal prosecution.

49.     The charges against Plaintiff were ultimately dismissed.

50.     Plaintiff was, at all times, aware of his confinement, Defendants had no privilege to confine Plaintiff and Plaintiff did not consent to such confinement.

51.     As a result of Defendants' actions, Plaintiff has been caused to suffer, *inter alia*, stress, anxiety, sleeplessness, economic loss, embarrassment, shame, and the physical manifestations of the same.

## AS AND FOR A FIRST CAUSE OF ACTION

52.     Repeats and realleges paragraphs numbered "1" through and including "51".

53.     Under the theory that Defendants violated Plaintiff's rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12111, *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION

54.     Repeats and realleges paragraphs numbered "1" through and including "53".

55.     Under the theory that Defendants violated Plaintiff's rights under the Fourth Amendment to the United States Constitution. 42 U.S.C. §1983.

6

## AS AND FOR A THIRD CAUSE OF ACTION

56.    Repeats and realleges paragraphs numbered "1" through and including "55".

57.    Under the theory that Defendants violated Plaintiff's rights under the First Amendment to the United States Constitution. 42 U.S.C. §1983.

## AS AND FOR A FOURTH CAUSE OF ACTION

58.    Repeats and realleges paragraphs numbered "1" through and including "57".

59.    Under the theory that Defendants violated Plaintiff's rights under the Rehabilitation Act of 1973. 29 U.S.C. §794, *et seq.*

WHEREFORE, Plaintiff respectfully demands judgment for:

- Compensatory, non-economic and intangible damages;

- Injunctive Relief;

- Economic damages;

- Punitive damages;

- Attorney's fees, costs and disbursements;

- Any such other relief as may be deemed just and proper.

Dated: December 4, 2014
       Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
Attorneys for Plaintiff, Tibor Farkas

By:    _____
       Amy L. Bellantoni (AB3061)
       2 Overhill Road, Suite 400
       Scarsdale, New York 10583
       (914) 367-0090
       (914) 367-0095 (facsimile)

7